The next case is Graham v. State University of New York. Good morning, your honors. May it please the court, this case presents the question whether the mere existence of an agreement between a university that is violating Title IX and the Department of Education dispossesses a district court's subject matter jurisdiction over a private action brought for injunctive relief from those violations. My name is Bernays T. Barkley and I'm representing the appellants in this case. It's clear from the record that SUNY Albany did not honor the terms of its agreement with the Department of Education. SUNY's continued failure to comply with Title IX requirements resulted in this litigation, including the claims relevant to the class action as well as the claims specific to Gordon Graham. Counsel, may I ask about mootness before you go to the merits? Obviously for Mr. Graham, the case is not moot. For the students, they've all graduated, right? That is correct, your honor. And so what remains a case in controversy with respect to the students? This case is not moot because it is and always has been a class action that has never been able to be heard. Why is it a class action? It's a class action because plaintiffs properly announced and demonstrated their intent to sue as a class, styled their case as a class action in the original complaint and each amendment thereafter because the class definition is consistent with Title IX case class action precedent and there's no variability among the members of the class. So the denial of class certification, which I think the district court essentially deemed moot in light of the summary judgment conclusion, that is a live question with respect to the students' claims. If it is, your honor, then that class action can relate back to the beginning of the first of the action as it did in Comer v. Cisneros. This court found that the decisions below on mootness and class action were so inextricably intertwined and the court dealt with them below in a way that got them backwards. And here, and what the Court of Appeals did in that case was to direct the lower court to certify the class and then it found that the class related back to the first filing of the complaint, which made it not moot as to the plaintiffs. I think it's a relevant precedent and I would respectfully ask the court to look at that one. But so what are you, with respect to the student plaintiffs, what are you asking us to do? I'm asking for a chance to either argue the motion for certification or have this court go ahead and direct that it should be certified. I think on the record, all the facts and information are necessary for this court to go ahead and direct the court below to certify the class. Okay, so you're asking us either to direct the district court to certify a class or for Or to reverse that decision. This court reviews a motion for certification de novo in order to look at the rationale for the court's decision. This is not something you addressed in your brief, right? I'm sorry, Your Honor. This is not something you addressed. You didn't really address the class certification issue on the merits in your briefing, did you? We did not address it in detail in our briefs to you. We don't have briefing that goes through the Rule 23 factors. Understood. Even if all the requirements for injunctive relief were met, the ultimate granting of such relief is one over which a district court has discretion, right? The granting of relief on the... In other words... Or the certification, Your Honor. I don't understand the question. In other words, even if... If you had made your case for injunctive relief, Judge McAvoy still retained discretion about whether to grant it. Isn't that right? He has discretion, Your Honor. In other words, why was his decision to defer to the existence of the administrative, ongoing Your Honor, he didn't exercise his discretion. He deliberately and expressly said... He didn't think he had any. And he said, even if I had it, I wouldn't exercise it because this case is by law. He ruled that as a matter of law, that because of this existing agreement, he could not have jurisdiction over the private cause of action. That is an error of law. And that is the only basis for his dismissal of the motion for class certification. So when you're looking at the class certification de novo, looking at under Parker v. Time Warner, you look at the basis for that decision. And the basis was only that he made a wrong, he made an error in his decision about his jurisdiction. Very dangerous, I think, decision that goes against the precedent set by the Supreme Court in Cannon v. University of Chicago, where they emphasized that the Title IX has two important purposes, objectives. The first is to avoid providing federal funding to support discriminatory practices. But that objective is entirely within the government's province, not within that of the courts. The second purpose stated by the Cannon court is to provide individual citizens with effective protection against those same discriminatory practices. This is the sole province of the federal courts. But the doors to the court were closed. And yet more than five years after that agreement was signed, nothing has been done. The OCR, Office for Civil Rights, has not communicated with the school. They haven't found the school to be in compliance. Nothing has been done. There is no public remedy yet available. I've got to say that in five years of litigating this case, I've learned that not many people like this law. Maybe a few lawyers. But the schools don't like it. The males don't like it. Even the females are kind of put off by it because nobody's watching. But mostly the Department of Education doesn't like it. The Department of Education and the Office for Civil Rights exists primarily to distribute a lot of federal money to schools. But the only tool that Congress gave the Department of Education to enforce this law was to take money away from schools. That's the only tool they've got. And in 50 years of violations, they have never taken one penny. And that's their only tool. And so the private right of action is absolutely essential to achieving at least one of the objectives that Congress intended. And the Supreme Court had no problem with the fact that both existed at the same time. That both the regulatory response and the court's private right of action existed at the same time. They said, as did the Department of Education, when they had their findings, they said, you are subject to a private cause of action no matter how the funds cutoff issue is resolved. Your time is going swiftly. Did you want to briefly address Mr. Graham's arguments? I do. Thank you, Your Honor. Coach Graham's action is a Title IX claim. The fact that he lost his job on account of a Title IX violation does not turn it into an employment discrimination claim under the Sassaman test. Suey's briefs have erected a novel legal theory that he needs to provide independent proof that he suffered some form of discrimination. This creation is not consistent with the district court's own rulings from 2018. Excuse me, from 2018. Counsel, how would you articulate the test that should be applied in this type of context, where the coach is essentially alleging that he was ultimately terminated because of discrimination based on the sex of the players he was coaching? Your Honor, while discrimination is essential in a Title IX case, there is nothing about the three-part test that involves, let alone requires, proof of any intentionality. The three-part test is objective, just like the government is objective. They don't care why you comply. They don't care who tells you to comply. They just want you to comply. And you've got to fit one of the squares in the three-part test. But intent to discriminate is inherent in a school's decision to divide teams by gender. That's the intention right there. No extra proof required. Thank you. The only point is that the district court failed to consider the material facts in dispute. And that should have precluded summary judgment. And the school has conceded that there were material facts in dispute. Thank you, Your Honor. Good morning, Your Honor. Sarah Rosenbluth on behalf of the appellees. There are a number of issues in this appeal, but the court need not reach all of them. I'd like to spend a few minutes presenting the court with the simplest path to an affirmance. First, the individual plaintiff's claims are moot because they have all either graduated or lost NCAA eligibility. Why isn't the denial of class certification not moot? That's not moot. So what do you do then? Right. So because their individual claims are moot, they have a stake in litigating the propriety of the denial of the class cert motion. But if that was properly denied, then there's no jurisdiction to reach the merits. And so our arguments as to, we have three different arguments as to the class cert piece. But the simplest one, which I think was conceded just now, is that the argument that, is waiver. Plaintiffs did not brief the issue in their opening brief. They did not argue. They haven't briefed the Rule 23 factors. But they've briefed that the denial of cert, the denial of class cert was wrong. And the district court's reasoning is, I think, nothing more than, I don't need to resolve that motion because I've concluded defendants win on summary judgment. That's right, except that I don't respectfully think that it is right that they briefed the issue of why class cert should have been granted. They simply said that they incorporate by reference the arguments made before the district court. But this court has held that that is insufficient to preserve issues for appellate review. So they did not make any substantive arguments in their opening brief as to class cert beyond incorporating by reference their papers before the district court. But even leaving aside the waiver, and again, I think that is the sort of easiest path to affirmance here. But the subsidiary arguments that we have first are that the plaintiffs failed in the first instance before the district court to affirmatively put forward any evidence showing that they had met the Rule 23 factors. Now, this very well could be a paradigmatic class action. However, the fundamental problem is that the named plaintiffs were all about to graduate. And so this court and the Supreme Court has held that Rule 23 is not a pleading standard. It requires affirmative evidence. And usually what you have in class actions, putative class actions, are affidavits from the class reps saying that they understand the duties of a class representative. They're willing to diligently and vigorously pursue the interests of the class and so forth. You know, it's usually a pretty low bar. But that bar is quite meaningful in this case in light of the fact that they were about to graduate. And they provided no assurances to the court that they understood their responsibility past graduation, that they remained committed to this litigation past graduation. So there was literally no evidence put forward in support of their class other than to an affidavit or declaration from each of their attorneys attesting to their experience in litigation. And then we have the argument as well as to the conflict of interest in class counsel, which I think is really quite real in this case. You know, we made the argument below that class counsel should not be appointed due to this disabling conflict of interest. There is a key document that we have that I have here today that was actually not in the record. So for those reasons, I understand if it sort of is easiest to avoid that issue. But I think we provide two other pretty independent and comprehensive reasons to affirm the denial of class cert and why sending it back to the district court to review the class cert in the first instance wouldn't make sense here. Where both they failed to put forward any evidence in the first instance to support their motion. And then second, they have actually not even briefed that issue in this court. And then as I said, because class cert was properly denied, the court then lacks jurisdiction to reach the merits of the student's Title IX claim. And with respect to Coach Graham, the court should affirm the dismissal of his claim for the reason given by the district court, namely that he failed to make out a prima facie case of discrimination against him as distinct from discrimination against his students. The court thus need not reach the question whether the university had a legitimate non-discriminatory reason for terminating the tennis team, which it did. And whether- Can I ask, you have a hypo in your brief about a male coach who was getting, a male coach to a women's team who's getting paid less than a coach to the men's team. And you, I think, concede that would be a prima facie Title IX claim, right? Yes. If certainly, sorry, is there more to the question? Unsurprisingly, yes. But if you concede that, it's hard for me to see what the difference is here, given that I think the allegation, and I think it's also conceded, that he was fired because of the ending of the women's team. Right, so- Or not re- Right, renewed. Contracted. Yeah, so if I can sort of distinguish between the two cases. So in the first case, which we do mention in our brief, that would, so you have a hypothetical where there's a men's basketball program and a women's basketball program at a college. Both are coached by men. The coach of the men's team gets paid more, gets a car, gets all these travel perks, and the coach of the women's team, who's also a man, gets paid less, doesn't get the same benefits. If evidence of that sort of disparity would, I think we are constrained to make it a prima facie case, because that shows that a similarly situated individual, another male coach, was treated differently because of, allegedly, the sex of the students that he coached. In this case, there's no comparator, for example. We don't have any evidence that there was a men's team that was terminated or its status was changed under somewhat similar circumstances, and then the coach of that men's team received some sort of favorable treatment. Well, right, it's not precisely the same, but I understand the structure of the argument to be the women's team, which I coached, was eliminated on the basis of sex, and I was therefore terminated as a result of that. Right. I guess implicit in that is a comparator that the men's team wasn't terminated. First of all, there's no men's tennis team, for what it's worth. And second of all, plaintiff's theory below, which I think is incompatible with the theory that you're putting forward now, is that the women's team was, and we cite this in our brief, and I don't have the precise record site off the top of my head, but he said that the women's team was terminated due to a desire to shift the money, the funds for the women's tennis team, to other women's teams. So that sort of shows that for whatever reason, they didn't like the tennis team. So his theory is that there was some sort of animus or beef with the tennis team, as distinct from other women's teams. So that does not raise an inference of sex discrimination. And then again, the only evidence that he's relying on here is this evidence of the university's alleged noncompliance with the three-part test. But we are aware of no cases that has ever applied the three-part test to a claim brought by a non-student. And indeed, this court recently issued another Title IX decision a week or two ago in the Radwan case. That's not really analogous to this case, but it is actually helpful because I think it, and this had sort of been clear already in the case law, but I think it makes crystal clear that in reviewing a Title IX claim, you import the Title VII burden-shifting framework and really kind of undergo the same analysis. So there's no, you know, there's no sort of exception for a three-part, you know, there's no suggestion that a three-part test would apply to an individual non-student's claim of discrimination. And unless the court has any further questions, I will. I just have one question. I understand your argument that we don't have, that the student's claims are moved, we can't get to them. If we were looking at the merits, wasn't it an error of law to essentially abstain? It's kind of, it feels like abstention, what the district court judge did, to say in light of the agreement, I can't grant relief here. That's an error of law. So what I would say to that is that at page 685, this is where I think that sort of section of his decision comes in, he did say that he believed that this relief was legally unavailable to the court. We don't defend that part of the decision. However, he did say in the alternative, even if I had the discretion to decide whether to grant this relief, I would not exercise that discretion for all the reasons. For what reasons? That this resolution agreement is already in place. It is already in the process of providing a remedy to the students. So I think the question then is, has he just sort of incorporated the error of law into the discretionary reason? I don't think so, Your Honor, because I think that the discretionary reasons are that, it's just that, you know, the fundamental claim is the same, the fundamental injury sought to be remedied is fundamentally the same as the injury sought to be remedied by the resolution agreement and the exact remedy is itself the same. So as a matter of equitable discretion, it would really duplicate that relief to order the exact same thing. And just sort of the timeline of this case here is that the resolution agreement was signed in August of 2017 and the plaintiffs filed this lawsuit in September of 2017. And the resolution agreement was supposed to be, you know, there was a several year window there. So the claim has never been that there's some deficiency in complying with the resolution agreement. From the outset, they sort of filed this lawsuit as kind of like a Me Too sort of lawsuit to really piggyback on the findings of the OCR. And so they've really kind of, you know, hitched their wagon to OCR out of the gate. And in light of that, the court reasonably found that it just simply wouldn't make sense to order the exact same relief that's already in the process of being carried out in the context of the federal agreement. Thank you. Thank you. Thank you both. And we'll hear rebuttal. I didn't hear rebuttal. Thank you both. And we will take the matter under advisement. The next case is Honore Bruce Paswell. And I will be hearing this case remotely. I understand that Appellate's counsel is participating by telephone. Good morning, Your Honor. This is Lowell Davis for the appearance. You may proceed. Yes. Thank you. Your Honor, this was a case that was originated in the bankruptcy commerce. It is our contention that notwithstanding the default, the material allegations of the adversary were deficient and failed to support the relief requested. In this matter, the marital residence of the debtor was sold. At the time of the sale, the—well, let me just go back. The marital residence became marital property upon the wedding and purchase of the debtor and his now-deceased wife. On October of 2014, they entered into a property settlement agreement. The property settlement agreement was determined by Judge Trey and confirmed by Judge Harris. At the sale of the property, notwithstanding, it was conceded in the adversary's complaint that the transfer of the deceased spouse's interest in the marital property was secured by return deems. So, when the adversary proceeding was started against the appellant, the complaint was deficient. We alleged a number of affirmative offenses in a motion to dismiss, there being a lack of federal jurisdiction under the marital exclusion, lack of jurisdiction under the probate, and that the complaint could have been dismissed under Rule 6. The marital agreement that was part of the record was actually missing certain pages. It was deficient in that regard, and as a consequence, the court could not have ruled based upon adequate evidence. And on that basis, I would respectfully request a repentance on that issue. The decision by Judge Trey, interpreted and affirmed by Harris, determined that the property settlement agreement was a sale of the property and went on to conclude that there was insufficient consideration. He also determined in that same decision that the state or the deceased spouse was entitled to bring a claim for $150,000. The October 14, 2014 agreement provided that the spouse would transfer her interest, the interest was not defined, to the debtor for $350,000, payable in two installments. As the debtor defaulted on making the second payment, the spouse went back to the marital judge to complain to her under the terms of the stipulation of settlement that the property was to be returned to her. At the time of the execution of the property settlement agreement, two deeds were prepared. One, transfer the title to the debtor so that he could refinance the property and fund the payments to the deceased spouse. The deceased spouse passed away in 2019, long before the debtor got his petition. The collateral argument is that the house never became part of the debtor's estate. Mr. Davis, the property has now been sold, correct? Sold, that's correct. Maybe you could spend a little of your time addressing your adversary's principle argument that Section 363M of the Bankruptcy Code renders your claim statutorily moot at this point. There was no stay pending appeal. I'm sorry. At this point, it would only be moot if there was no possible relief that could be afforded to these appellants. Their mother on the date of her death, which debt would have passed outside of the bankruptcy estate directly to the appellant. That would be one of the requested relief that we're seeking, is that from the proceeds of the sale, that either the proceeds be paid to the appellant, let there was a mortgage on the property. In the alternative, the agreement between the debtor and the deceased spouse will have a security provision in the event of a default. Now, Judge Drain, affirmed by Judge Harris, concluded that the money owed to the deceased was the balance of the unpaid portion of the settlement agreement. Those funds are intact and are available to be paid to the appellant, either the entirety or the amount that is still due it up. We had a stay and then the stay expired. Right. So there's no stay pending appeal. And the law in this circuit is that you can't get appellate review of a sale, such as the one here, authorized by 363B or C, as long as it was made to a good faith purchaser. And don't we have a good faith purchaser here? Well, it would not, under those circumstances, which we acknowledge, the issue is twofold. First, the property never should have been part of the debtor's estate. Well, if you had got a stay, you could come up here and make that argument. But doesn't, as Judge Livingston pointed out, doesn't Section 363M impose requirements that you just simply have not met? Well, under these circumstances, they still could afford the appellant's unrelief, and that would be what was identified by the district court as the money still due to the spouse at the time of her death. At the time of her death, there was a default, and the default would have been cured, which was what the district court would netted by making the payment to the appellant of the amount still due at all. But the agreement provided that if there was a default in the first payment, the property would be sold. In the event of a default on the second payment, the spouse had the right to the return of the property or to return of the property and reimbursement for the money that the debtor had paid. In this particular instance, the debtor deflated the value of the marital residence by taking out additional loans other than what was contemplated by the settlement agreement. The settlement agreement, incomplete as it was, Bill pointed out that there was a default, and the default is conceded. All of the allegations necessary to support the appellant's claims are conceded in the adversary proceeding. However, notwithstanding the adversary complaint, which was totally deficient, the appellants were not even named in any of the allegations of the complaint. There was no allegation that the appellants were a party to the agreement or had knowledge of the agreement. Why is that required? Counsel, why is that required to make out the claim under the fraudulent transfer claim? Well, because they weren't a party to the fraud. They weren't – had knowledge of the fraud, and the fraud was based upon inadequate consideration and tactics to the debtor when the debtor's attorney released the deed in extra. And as a collateral matter, we were able to fill some of the gaps in the adversary complaint part of the record because, again, it was missing pages. But the application was made to not allow it in the attendance, notwithstanding the debtor. The trustee was aware – I'm sorry, the trustee conceded that there was money due in Owing, the spouse, at the time of her death. At the time of her death, which preceded the debtor filing Chapter 7. Mr. Davis, your time has expired. We'll hear from Mr. Seidman now. Certainly. Thank you. You're welcome. Thank you. Good morning. May it please the Court, my name is Lon Seidman with the firm LaMonica Herbst & Menescalco for appellee Mark Tulis, the Chapter 7 trustee of the debtor's bankruptcy estate. I'll start briefly where appellant's counsel left off, which is the proposition that the appellants somehow needed to have knowledge of a fraud in order to be named as defendants. In the complaint, seeking to avoid and recover the transfer of title to the real estate to them as a fraudulent transfer. The short answer to that is it's simply not the case. It is not relevant on a fraudulent transfer claim pursuant to the New York debtor-accreditor law. What is relevant for purposes of this appeal, we submit, is whether or not the bankruptcy court was within its discretion to grant the default judgment under the circumstances that were present before the court at the time. And we submit it's very clear that it was a sound exercise of the bankruptcy court's discretion to grant that judgment. To just state briefly what this underlying complaint is about, the underlying complaint asserts that the debtor, Mr. Paswell, who had a 100% ownership interest in this real property, transferred his title to his former spouse and to the appellants with the intent to hinder, delay, or defraud creditors and without any consideration being provided to the debtor in return. And briefly by way of context, the debtor had been sued for pregnancy discrimination and in 2015 the jury verdict was rendered against the debtor for several million dollars consisting of both compensatory and punitive damages. The complaint explains that the jury verdict was rendered on September 15, 2015 and that two weeks later, on September 29, 2015, the debtor sent an email explaining that it was his intention to protect this real property for the benefit of his children. He wanted to leave it to his children. Mr. Seidman, can I turn you to mootness? Yes. So with respect to 363M, so starting with statutory mootness, it seems as though that would clearly apply if this were a sale order that were the basis for the appeal, but the sale order didn't get appealed. That's correct. That's correct, Judge. The sale order was not appealed from, but certainly to the extent that the appellants would be seeking to somehow have title returned to them in the event that there was a reversal. Well, they say they're not seeking title. They're seeking proceeds. I'm not sure how that would work, to be honest. Yeah, so to the extent they're seeking proceeds, what they need to do and what they've done is file a claim against the debtor's bankruptcy, seeking a payment of money. And they did that. And that claim has been adjudicated by the bankruptcy court, and there was an appeal. That claim was disallowed by the bankruptcy court, and there was a notice of appeal that was filed by the appellants, and the time to perfect that appeal under the applicable rules has expired without a brief being filed and that appeal being perfected. But the short answer is to the extent that the appellants claim that they're owed anything, and of course it's our position that they're not, that they had no right to receive that real estate. It's admitted in the record that they paid nothing for it. Their recourse would be to file a claim in the bankruptcy case, which is exactly what they've done. So I think that's an argument as to constitutional mootness in the sense that there wouldn't be, there's no mechanism, or the mechanism that's available to try to get some proceeds is fruitless. So there's sort of nothing left in terms of relief that can be provided. Could you respond to the applicability of statutory mootness in light of the fact that this is not an appeal of a sale order? Well, it's not an appeal of a sale order because, I mean, it's one step removed. It's even more clear, we think, that there's no base, that the appeal is moot because we, for exactly that reason, that not only was there no stay that was obtained to prevent the sale to the good faith purchaser from taking place, but there was no appeal that was ever sought to be taken from that sale order. So we find ourselves in a situation where we have a third party purchaser, a good faith who purchased for good faith, in good faith and for value, who is now the owner of the property. And we have a situation where these appellants do not have the ability to undo that, to unwind that. The sale has taken place. It's final. And, again, we would submit that whether it's viewed as statutory mootness under Section 363M or equitable mootness or constitutional mootness, the fact of the matter is we can't undo the sale. And the recourse, to the extent they seek any payment from the debtor, is through the debtor's bankruptcy case and the filing of a claim. Do you, the Supreme Court's hearing the Moak Mall case, they just heard an argument, which maybe has some overlap here. Do you have a view as to whether we need to wait for that decision? Yeah. Our view is that you do not. We are not asserting that this appeal should have been dismissed because this court, on the theory that this court lacks jurisdiction to hear it, pursuing a 363M, which I think is the essence of the question that's been argued on December 5th before the U.S. Supreme Court. We're not arguing that 363M is jurisdictional. What we're saying is that because of 363M, as well as equitable mootness, as well as all the other more fundamental reasons why the entry of the default judgment was appropriate, that the bankruptcy court's order should be affirmed. So for that reason, we don't see any reason to have to wait for there to be a Supreme Court decision on that issue presented in that other case. Thank you. To the extent that there's time remaining, I'm happy to tick through quickly the main two factors that both the bankruptcy court and the district court relied upon in detail in finding that there was both A, a willful default on the part of the appellants to ever appear in the underlying action, and B, the very detailed finding that none of the purported affirmative defenses that the appellants sought to interpose in their proposed answer have any merit whatsoever. And for those reasons, the courts below found that the entry of default judgment was entirely appropriate. This was a willful default. There are no meritorious defenses. And we submit that the default judgment should be affirmed. If the court has any questions, I'd be happy to address it. But there are detailed findings that both the bankruptcy court and the district court made in respect of both of those factors that are the key factors that the Second Circuit has said ought to be considered in determining whether there was abuse of discretion in entering a default judgment. Thank you. Thank you. Thank you, Mr. Seidman. Your Honor, very briefly in further and required rebuttal. Yes. You have two minutes, Mr. Davis. Okay. Thank you. First of all, speaking of the willfulness of default, I'll point out to the panel that during the time subsequent to the mailing of the adversary complaint, the debtor by counsel served a summons with notice and filed a list pendant against the property. That list pendant continued even after the filing by the debtor of the Chapter 7 petition. And this was known to the trustee because we told the trustee and we asked and we defended that lien because not only would that lien give the right of that predator to hopscotch over all of the other predators, but it would also defeat the rights of these appellants. Now, there was no response to the fact that the appellant's names are nowhere in any of the 140 or so allegations of fact. So to say that there was some sort of fraud is not supported by the record. And the conduct of the debtor, this was in a matrimonial action that preceded the Chapter 7 filing and any matrimonial settlement related to property would be retroactive to the date of the divorce judgment, which here was 2012. But the appeal from the denial of the claim has not been dismissed. We've held it in abeyance, rightfully or not, because of this appeal. And we didn't want to have a series of appeals. But there is no allegation of knowledge on the part of the appellants with regard to any fraud. There is no allegation that they had knowledge of the matrimonial agreement between their parents or that they participated in it. The fact that the allegation that the debtor wanted to preserve some asset for his children has no link to the allegation of fraud. These were his children. Their parents were divorcing. The spouse sought to preserve her right to her equitable share of the marital property, which she did. The settlement agreement was breached. And still there's the issue that the settlement agreement itself has made part of the record here with Swiss cheese in that there were huge gaps in it because the trustee never got or never provided the court with a complete copy. So the court will never know all of the elements of the settlement, but there's still a huge gap as to any knowledge on the part of the appellant. Mr. Davis, your time has expired. Did you want to sum up in one or two sentences? Yes. Briefly stated, the trustees should have went back either to the matrimonial court to have the issue of the cause and effect of the matrimonial stipulation. And then have that Supreme Court decision transferred to the bankruptcy court and move forward. There was no opportunity for the spouse to even participate, which she should have. She did bring a subsequent contempt application before the Westchester Supreme Court. Alternatively, once the spouse passed, the property passed by operation of law, absent of any intent, and it did pass prior to the filing by the debtor. So the trustee, once again, could have petitioned the surrogate court for an adjudication as to the rights of the appellant in that venue. Because that's the primary place to adjudicate title to the property. So they had two opportunities. We had asked for a time to answer the complaint. It was denied for obvious reasons. All things being said, the absence of material allegations that match the relief sought are absent. The question of the appropriate exception to federal jurisdiction is there and not disposed of. And neither is the marital exclusion. Thank you, Mr. Davis. It's a little awkward on the telephone, but I think we understand and have your argument. We'll take the matter under advisement. Thank you, both. And that concludes the arguments to be heard this morning in court. So I'll ask the deputy to adjourn court. Thank you.